HOWARD et al. v. CITY OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

No. 115.

COLLISION (§ 42*)—STEAM VESSELS CROSSING—FAILURE TO KEEP COURSE.

A decree affirmed which found, on conflicting testimony of many witnesses who testified in open court, that libelant's steam lighter was solely in fault for a collision with a city ferryboat in Buttermilk Channel on the ground that, the vessels being on crossing courses with the lighter, the privileged vessel, she did not keep her course nor conform to the crossing agreement made with the ferryboat.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 42; Dec. Dig. § 42.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Harold M. Howard and A. F. Howard, copartners and owners of the steam lighter Howard Company, against the City of New York. Decree for respondent, and libelants appeal. Affirmed.

The following is the opinion of Hand, District Judge, in the lower court:

In this case the facts are that the Bay Ridge always carried the Howard Company on her starboard bow; and, when the vessels first sighted each other, the Howard Company had the Bay Ridge on her port bow. While in that position, therefore, the Bay Ridge was the burdened vessel and the Howard Company, the privileged. I conclude, amid the dispute in testimony, that before the collision occurred the Bay Ridge had crossed the Howard Company's bows, and the situation covered by the starboard hand rule had disappeared. My reason for thinking this is that all the witnesses except Hull, Rogers, and Hansen placed the vessels on passing courses starboard to starboard at the time the whistles were blown. Hull and Rogers are witnesses whose testimony has little weight with me; Hull, both from his appearance and his contradictory statements, Rogers because he seemed so strangely addled in everything he said and because he talked so much at random. Hansen was a good witness, but I think his observation must yield in this case to that of other witnesses. E. F. Lewis originally put the vessels on passing courses starboard to starboard, but drew a different diagram upon the trial. I accept his first statement. Moreover, the testimony is almost unanimous that the Bay Ridge was in about midstream, favoring the Brooklyn shore, while the Howard Company had passed close to the buoy and not moved very far in the same direction.

I believe that the probability is it was the Howard Company which ported her helm and subsequently in extremis starboarded, and not the Bay Ridge. The Bay Ridge was angling upon the Brooklyn shore, and her course was divergent at least two points, and probably more than that from that of the Howard Company; she was much the faster vessel, and once she got upon the bows of the Howard Company, it was not possible for their starboard sides to come in contact, unless one or the other ported markedly. I think that the Bay Ridge at that time meant to cross the Berwind's bows, a boat substantially dead in the water; had she meant to go under her stern, she would have involved herself not only with the Howard Company, but with the Major, which she had already seen. Her course therefore took her continuously away from the Howard Company, once she steadied her helm after rounding Governor's Island, and there was nothing to induce her to change that course. It is quite true that a number of disinterested witnesses say that it was the Bay Ridge which ported into the Howard Company and not the Howard Company which ported into the Bay Ridge, and that of these witnesses the men on the Berwind's tugs, who were themselves substantially still in the water, were in good position to tell which vessel was moving. On the other hand, it is very likely they were misled by the undoubted fact that the Bay Ridge ported two or three points when opposite the end of Governor's Island to lay out a new course across the Berwind's bows. Men in the position of the Berwind's tugs or of Hansen saw the distance from them in perspective, but the distance between the Bay Ridge and the Howard Company lineally, and they might well mistake this porting for the cause of the collision, which it certainly was not. As to the respondent's two passengers who swore that it was the Howard Company which swung into the Bay Ridge and not the Bay Ridge which swung into the Howard Company at least they had the advantage of being at the very spot, and Swackhamer, the other impartial witness, was nearer than the libelant's witnesses unless it be Hansen. Again, if any credence is to be given to interested witnesses, the Bay Ridge is in a much stronger position than the Howard Company.

But the chief thing upon which I rely in determining which vessel ported into the other is the difference in the apparent poise and character of the men at the wheel and the difference of readiness to answer to the emergency of each vessel. My impression of the general feebleness of the Howard Company's mate was strongly corroborated by his conduct at the time of the collision, his aimless rolling of the wheel back and forth, which is amply attested, and his failure to stop his boat until the very moment of collision. Whether or not he actually ported during that time I cannot know, but that he might have done anything seems to me amply proved. On the other hand,

I am sure that the Bay Ridge had been much more prompt to avoid collision, and that she had backed at the time of the collision long enough to kill her way in the water. The position of the wreckage requires the conclusion that the Howard Company ran into the Bay Ridge and not the Bay Ridge into the Howard Company. This suggests that the care and the watchfulness was on board the Bay Ridge. I am inclined to believe the story of Bunce that when he first blew all was well, but that when he looked again the Howard Company had turned in upon him. At least I am satisfied that the Howard Company has not carried the burden of proof on this point.

Next is the question of the lack of a lookout on the Howard Company. These were very crowded waters, and there was only one man to do everything which might be necessary, and that man quite lost his head in the emergency. Certainly it was a fault not to leave more than one man on deck or in the pilothouse at the time (The Gilchrist, 183 Fed. 105), and I cannot say that the fault did not contribute to the collision. I believe that had the Howard Company put her helm hard a starboard at once upon answering the two blasts, or, if she had backed at the same time, she would probably have avoided the collision.

This brings up the final question which is of the alleged fault of the Bay Ridge in waiting so long before giving her first signal. There is a good deal of dispute about this, but I think it quite clear, especially from Bunce's original statement that the vessels were very near together, say not over 500 feet, when he blew. This was too short a time to allow and did not fairly comply with the rule which requires a reasonable time, certainly more than the 20 seconds, which Bunce allowed. Can I say that this certainly did not contribute to the collision? I have found that there is no adequate ground for supposing that the Bay Ridge sheered to starboard, but now the burden of proof is upon the Bay Ridge and not the Howard Company. Nevertheless, I believe that it was the Howard Company that sheered, not the Bay Ridge, even when the burdens are changed, and, if so, then how could the failure of the Bay Ridge to blow sooner affect the result? The collision was caused by the fault of the Howard Company in porting when she should have starboarded, and certainly that was not caused in any way by the failure to blow the signal sooner. The only theory I can think of is that it was the delay in the signal which confused the pilot and made him swing in when he should have swung out, but that was not a result to be anticipated. If the delay had prevented the Howard Company from doing what she otherwise could have done to avoid collision, then the delay would have contributed; but, if it was the occasion for needlessly doing the exact opposite of what was necessary to avoid collision, then it should not be attributed as a fault to the Bay Ridge.

Besides, this is a case where the fault, as I view the facts, are disproportionate, and I need not speculate too nicely about the results of failing to blow sooner.

The libel will be dismissed, with costs.

This cause comes here upon appeal, holding the steam lighter Howard Company solely liable for a collision between herself and the municipal ferryboat Bay Ridge. The collision occurred somewhat to the northward and eastward of the black spar buoy in Buttermilk Channel at the southeastern side of Governor's Island. The facts are sufficiently stated in the opinion of the District Judge.

Carpenter & Park, of New York City (Samuel Park, of New York City, of counsel), for appellants.

Archibald R. Watson and Carter, Ledyard & Milburn, all of New York City (Walter F. Taylor and J. M. Richardson Lyeth, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The Howard had no lookout, but as her navigator saw the Bay Ridge as soon as a lookout would—in ample time for ex-

changing signals and for safe navigation—we cannot see that such fault had anything to do with this collision.

When the first signals were blown, the boats were either substantially head to head, or on crossing courses. The District Judge found that they were on crossing courses. In such a position with the Howard on the starboard hand of the Bay Ridge the propriety of the suggested departure from the rules (a departure acceded to by the Howard) depended on the relative positions of the boats. If the positions were such that the Bay Ridge would cross the Howard's bow before reaching the point of intersection, the two-blast signal proposed a safe mode of passing. As to the position and heading of the two vessels at the time of interchange of signals there is a sharp controversy on the proofs.

As the finding of fact reached from the testimony is one way or the other, the conclusion of law, fault, or no fault in signaling by the Bay Ridge, follows. The findings of Judge Hand on this branch of the case, on conflicting testimony, we are not inclined to reverse.

The testimony suggests that there was a change of course contrary to the promise of the exchanged signals: (a) By one vessel; (b) by the other; or (c) by both.

Which changed her course contrary to the exchanged signals is a disputed question of fact, with much testimony on both sides.

The District Judge had the witnesses all before him, participated in their examination and, as his opinion shows, was influenced towards his decision by their several personal equations—which was quite natural. He found that, if, when their signals were blown, both had kept their courses (still more if both had starboarded as their signals promised) they would have passed safely. He also finds that the Bay Ridge did not sheer to starboard, but that the Howard did sheer to starboard. We cannot persuade ourselves that all these findings of the District Judge are so clearly wrong (the evidence is from many witnesses and greatly conflicting) that we who have had no opportunity to really weigh the evidence of individual witnesses should reverse him on his findings of fact. Upon those findings, the conclusions as to the faults alleged are correct.

Decree affirmed, with costs.